# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| SHARMARIE ROCKY, | ) |
| Plaintiff, | ) Case No. 98-8220-CIV-ZLOCH |
| v. | ) Magistrate Judge Seltzer |
| COLUMBIA LAWNWOOD REGIONAL MEDICAL CENTER and FLORIDA COMMUNITY HEALTH CARE CENTERS, INC., | ) **PLAINTIFF'S OPPOSITION TO DEFENDANT'S (FLORIDA COMMUNITY HEALTH CARE CENTER'S, INC.'S) MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) |
|  | ) **JURY DEMANDED** |

NOW INTO COURT, through undersigned counsel comes plaintiff in opposition to *Defendants' Motion for Summary Judgment* filed by Florida Community Health Care Centers, Inc.

## INTRODUCTION

Plaintiff Sharmarie Rocky, who was formerly employed by defendant Florida Community Health Care Centers, Inc. ("FCHCC"), alleges in this action that she was terminated in violation of the Americans with Disabilities Act. More specifically, Ms. Rocky's son has severe disabilities, and Ms. Rocky alleges that her termination was due to her association with her disabled son.

FCHCC has moved for summary judgment, arguing both that Ms. Rocky cannot establish

1

a *prima facie* case, and that – even if she has evidence to make out a *prima facie* case – she has no evidence to establish that FCHCC's articulated reasons for firing her are pretextual.  Ms. Rocky would respectfully suggest that she has evidence sufficient to establish a *prima facie* case and that she has evidence to establish pretext.

CONCISE STATEMENT OF FACTS
AS TO WHICH IT IS CONTENDED THERE EXISTS A GENUINE ISSUE TO BE TRIED[1]

1.  Ms. Rocky was qualified for her position with FCHCC.

    A.  Ms. Rocky has an associate degree as a medical assistant with office technology from Webtster College.

    B.  Ms. Rocky has CPR and first aid certificates issued by the Red Cross.

    C.  Ms. Rocky has a pediatric advanced life support certificate issued by the Red Cross.

    D.  Ms. Rocky is certified as a medical assistant through the American Registry for Medical Assistants.

    E.  Ms. Rocky is fully qualified under the laws of Florida to be a medical assistant.

    F.  Ms. Rocky was advised by FCHCC (Dr. Susan Zimmer, Ms. Rocky's immediate supervisor, and Nancy Zeigler, FCHCC's manager of the Fort Pierce Unit and the person who hired Ms. Rocky) that she met all of FCHCC's qualifications for the position for which she was hired.

    G.  The essential function of the job was patient care, which Ms. Rocky was fully capable of doing.

    H.  Attendance at work, as defined by the concept of perfect attendance in accordance

---

[1]All facts asserted herein are evidenced by the January 28, 1999, Affidavit of Sharmarie Rocky which is appended hereto as Exhibit 1.

with scheduling, was not an essential function of the job.

I. Rather, FCHCC's own policies and procedures provided for sick leave and other instances where attendance at work was excused. In particular, FCHCC had a sick leave policy.

J. Further, FCHCC at the onset of Ms. Rocky's employment (1) was made aware that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and (2) agreed that perfect attendance was neither required nor essential.

K. It was further stressed that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities, and that FCHCC agreed that perfect attendance was neither required nor essential.

2. Ms. Rocky was the subject of an adverse employment action.

L. Ms. Rocky was fired by Nancy Zeigler and Dr. Zimmer.

M. Nancy Zeigler and Dr. Zimmer told Ms. Rocky on the day she was terminated that she had missed more work than they had thought she would and that due to absenteeism her work quality was unacceptable and that she had the choice of finishing the day or leaving then.

N. Nancy Zeigler's and Dr. Zimmer's words made it unequivocally clear that Ms. Rocky's employment was being involuntarily terminated.

3. FCHCC knew that Ms. Rocky had a relative with a disability.

O. At Ms. Rocky's interview, she told both Nancy Zeigler and Dr. Zimmer that she had a son with a disability and a mother who was disabled.

3

P.     Ms. Rocky also told Nancy Zeigler's Executive Secretary about her son's disability.

Q.     Ms. Rocky's son Phillip is disabled.

R.     Phillip, age 7, is disabled and has been since birth.  Phillip has major problems with all major body systems – for example, breathing problems, constant tremors, and kidney problems.  He has a life expectancy of 3-11 years.

4.     The adverse employment action suffered by Ms. Rocky was because of her relationship with her disabled son.

S.     Ms. Zeigler and Dr. Zimmer told Ms. Rocky that she was being fired because of her absences and tardies, which they acknowledged were because of Phillip's doctor appointments

T.     Ms. Zeigler had also told Ms. Rocky that she was unhappy about Ms. Rocky having to be late as a result of taking Phillip to the doctor.

U.     Two days prior to being fired, Ms. Rocky was called from Phillip's school due to a life threatening medical emergency where Phillip had gone unresponsive and could not be woken up.  Ms. Zeigler told her to go, but then two days later said the absence was unwarranted and a part of a pattern of excessive absenteeism.

5.     FCHCC's reasons for firing Ms. Rocky are pretextual.

V.     Ms. Rocky did not miss the amount of work alleged by FCHCC.  Rather, they have exaggerated the amount.

W.     The absences of which FCHCC complains were authorized and agreed to by FCHCC.

X.     FCHCC agreed earlier that the type of attendance issues Ms. Rocky had were acceptable to them and did not make her unacceptable or unqualified for the job.

4

CONTROVERSION OF
"DEFENDANT'S UNDISPUTED STATEMENT OF FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT"

1.    Agreed except that Ms. Rocky is now 32.

2.    Agreed.

3.    Agreed.

4.    Disputed.  Ms. Rocky disagrees with FCHCC's characterization of the essential functions
of the job as including "to be present at the clinic."  The essential function of the job was
patient care, which Ms. Rocky was fully capable of doing.  Attendance at work, as defined
by the concept of perfect attendance in accordance with scheduling, was not an essential
function of the job.  Rather, FCHCC's own policies and procedures provided for sick leave
and other instances where attendance at work was excused.  In particular, FCHCC had a sick
leave policy.  Further, FCHCC at the onset of Ms. Rocky's employment (1) was made aware
that Ms. Rocky would – due to her son's disability – miss more work than an employee not
associated with a child with severe disabilities and (2) agreed that perfect attendance was
neither required nor essential.

5.    Disputed.  Ms. Rocky disagrees with FCHCC's assertion that Ms. Zeigler indicated that
attendance was an essential function of the job.  In fact, Ms. Zeigler at the onset of Ms.
Rocky's employment (1) was made aware that Ms. Rocky would – due to her son's disability
– miss more work than an employee not associated with  a child with severe disabilities and
(2) agreed that perfect attendance was neither required or essential.  Ms. Rocky also disagrees
with FCHCC's denial that Ms. Zeigler told Ms. Rocky that FCHCC would work with Ms.
Rocky to accommodate absences and tardiness.  In fact, the discussion between Ms. Zeigler

5

and Ms. Rocky was that FCHCC's needs did not require perfect attendance.

6.      Agreed except that Ms. Rocky did not review the entire document.  Also, it was further stressed that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and that FCHCC agreed that perfect attendance was neither required nor essential.  The probationary period was to review Ms. Rocky's performance as it related to patient care.

7.      Disputed.  Ms. Rocky called in any time there was a problem or had advance authorization from Ms. Zeigler or Dr. Zimmer.  The absences for Ms. Rocky's own medical reasons were due to an emergency surgery for a ruptured cyst, and the absence was excused.

8.      Disputed.  The LPN did not regularly have her own patients.  The LPN, Chelsea Copeland, told Ms. Rocky that none of her absences caused her any problems.

9.      Agreed.  However, Ms. Rocky advised Dr. Zimmer that the scheduling issues relating to Ms. Rocky's disabled son had already been cleared and approved by Ms. Zeigler.  Dr. Zimmer never advised at any later time that she was reneging on what Ms. Zeigler had authorized and approved.  Thus, Ms. Rocky was left with the understanding that any tardinesses and unexpected absences which were a result of Phillips disability were acceptable to FCHCC.

10.     Disputed.  In fact Ms. Zeigler authorized Ms. Rocky to be absent due to a medical emergency suffered by Phillip of which Ms. Zeigler was aware.  This was the day Ms. Rocky had received a telephone call from Phillip's school advising that he had gone completely unresponsive and could not be revived.  Phillip was rushed to the emergency room.

11.     Disputed.  In fact, Ms. Rocky called in late any time there was a problem or had advance authorization for Ms. Zeigler or Dr. Zimmer.

6

12.    Agreed.

13.    Disputed. Nancy Zeigler and Dr. Zimmer told Ms. Rocky on the day she was terminated that she had missed more work than they had thought she would and that due to absenteeism her work quality was unacceptable and that she had the choice of finishing the day or leaving then. Nancy Zeigler's and Dr. Zimmer's words made it unequivocally clear that Ms. Rocky's employment was being involuntarily terminated. She did not voluntarily quit.

14.    Disputed. Ms. Rocky was expressly told by Ms. Zeigler during the interview that Ms. Zeigler had the authority to hire and to fire. At no time on the day that Ms. Rocky was fired did Ms. Zeigler or Dr. Zimmer state that they were not firing her but rather had to wait to see what Mr. Brown might decide. They said she was being fired.

15.    Agreed.

16.    Disputed. Ms. Rocky was not late due to school bus problems. Rather, Ms. Zeigler adjusted Ms. Rocky's schedule for one month after the beginning of the school year. It is disingenuous to now assert that the agreed upon schedule amounted to tardiness. The only time Ms. Rocky took off for her own health was for the emergency surgery. She did not miss work due to her disabled mother's health.

ARGUMENT

A.    Plaintiff Can Make Out A Prima Facie Case of Discrimination.

FCHCC correctly states the *prima facie* case elements in a case under the ADA where there is alleged associational disability. Those elements are:

(1)    The plaintiff was qualified for the position;

(2)    The plaintiff was the subject of an adverse employment action;

(3)     The employer knew the plaintiff had a relative with a disability; and

(4)     There is some evidence that the adverse employment action was because of the relationship.

Contrary to FCHCC's argument, Ms. Rocky asserts that she can present evidence of each of these four elements of a prima facie case.

### 1.     *Ms. Rocky was qualified for the position*

As set forth above, Ms. Rocky is a fully qualified medical assistant, who by FCHCC's own admissions when she was hired fully met all qualifications for the job.  The thrust of FCHCC's argument that Ms. Rocky was not "qualified" for the job is their factual assertion that Ms. Rocky was unable to meet the attendance requirements of the job.  That fact question – whether Ms. Rocky was able to meet the attendance requirements of the job – remains in genuine dispute.

The issue is not one of reasonable accommodation.  The issue is what were the actual attendance requirements of the job, and was Ms. Rocky able to meet those requirements.

FCHCC seems to argue that the job "required" nearly perfect attendance.  In fact, it is possible to conceive of some jobs that might require perfect attendance.  But in the case of Ms. Rocky's position. FCHCC by its own agreement at the onset of Ms. Rocky's employment admitted that her job requirements did not require that regularity and that, in fact absences, necessitated by medical issues were acceptable and within the parameters of the job's actual requirements.

FCHCC cannot fairly argue that perfect or near perfect attendance was an essential function of a job which factually FCHCC had already stated did not require such perfect attendance.  Where an employer has stated that the job description's attendance requirements are flexible and that unexpected absences were acceptable, there is at a minimum a fact question which the jury should

8

resolve as to whether in fact the employee was qualified or unqualified due to an alleged dispute over what attendance record was essential.

Further, FCHCC exaggerates the amount of missed work by mischaracterizing certain aspects of the facts. For example, they cite as incidents of "tardiness" a series of dates when for a month Ms. Rocky's schedule had been changed by Ms. Rocky's supervisor to accommodate the school bus schedule. A genuine issue of material fact exists regarding whether an employee asking for a schedule modification and having the request granted, with the employee then coming in pursuant to the mew agreed upon schedule, should be deemed tardy and therefore unqualified due to inability to meet supposed attendance requirements.

FCHCC also attempts to suggest that as a factual matter any time Ms. Rocky was not at work it caused an undue problem with the LPN having to double her patient load. In fact, the LPN did not have a separate patient load; rather, she had administrative and paperwork duties. Thus, when she filled in for Ms. Rocky, she was not neglecting other patients, she merely had to delay her administrative work and paperwork – something which the LPN stated was not a problem. Again, a genuine issue of material fact exists as to whether near perfect attendance was an essential function of the job, or whether in fact missed attendance was contemplated as a part of the job and whether the job could be accomplished in light of the attendance issues caused by Ms. Rocky's need to care for her son.

2. *Ms Rocky was the subject of an adverse employment action*

FCHCC would like to characterize Ms. Rocky's termination of employment as being a voluntary resignation rather than a firing. In fact, as set forth above, Ms. Rocky was fired – involuntarily terminated.

      3.     *FCHCC knew that Ms. Rocky had a son with a disability*

FCHCC does not appear to dispute this fact.

      4.     *There is evidence that the adverse employment action was because of the relationship*

The following facts create a genuine issue of material fact as to whether FCHCC fired Ms. Rocky because of her association with Phillip. Ms. Zeigler and Dr. Zimmer told Ms. Rocky that she was being fired because of her absences and tardies, which they acknowledged were because of Phillip's doctor appointments. Ms. Zeigler had also told Ms. Rocky that she was unhappy about Ms. Rocky having to be late as a result of taking Phillip to the doctor. Two days prior to being fired, Ms. Rocky was called from Phillip's school due to a life threatening medical emergency where Phillip had gone unresponsive and could not be woken up. Ms. Zeigler told her to go, but then two days later said the absence was unwarranted and a part of a pattern of excessive absenteeism.

B.     <u>Plaintiff Can Present Evidence of Pretext.</u>

The following facts create a genuine issue of material fact as to whether FCHCC's articulated reason for firing Ms. Rocky are pretextual. Ms. Rocky did not miss the amount of work alleged by FCHCC. Rather, they have exaggerated the amount. The absences of which FCHCC complains were authorized and agreed to by FCHCC. FCHCC agreed earlier that the type of attendance issues Ms. Rocky had were acceptable to them and did not make her unacceptable or unqualified for the job.

## CONCLUSION

Plaintiff respectfully prays that *Defendants' Motion for Summary Judgment* be denied.

Respectfully submitted,

_____

Robert Anthony Bogdan
Florida Bar No. 0040606
Attorney at Law
410 S.E. 1st Terrace
Pompano Beach, FL 33060-7108
Tel.     (954) 784-9788
Fax      (954) 784-9528
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that I have this _____, served a copy of the foregoing upon opposing counsel, first class postage prepaid, by mailing to: Rachel Alters, Esq., McGrane & Nosich, P.A., 2801 Ponce de Leon Blvd., Twelfth Floor, Coral Gables, FL 33134 and Alexander D. del Russo, Esq., Levy, Kneen, Mariani, Curtin, Wiener, Kornfeld & Del Russo, P.A., 1400 Centrepark Blvd., Ste. 1000, West Palm Beach, FL 33401.

_____

Robert Anthony Bogdan

11

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| SHARMARIE ROCKY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  98-8220-CIV-ZLOCH |
| | ) | |
| v. | ) | Magistrate Judge Seltzer |
| | ) | |
| COLUMBIA LAWNWOOD | ) | |
| REGIONAL MEDICAL CENTER and | ) | |
| FLORIDA COMMUNITY HEALTH | ) | |
| CARE CENTERS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

STATE OF FLORIDA

COUNTY OF BROWARD

## AFFIDAVIT OF SHARMARIE ROCKY

BEFORE ME, the undersigned authority, came and appeared Sharmarie Rocky, who being duly sworn did depose and say:

A.      I have personal knowledge of the matters set forth in this affidavit, and all statements are true and correct to the best of my knowledge, information and belief.

B.      I am the plaintiff in the above-captioned proceedings, and make this affidavit in support of my opposition to defendants' motions for summary judgment.

C.      Ms. Rocky was qualified for her position with FCHCC.

      1.      Ms. Rocky has an associate degree as a medical assistant with office technology from

1

Exhibit 1

Webtster College.

2.     Ms. Rocky has CPR and first aid certificates issued by the Red Cross.

3.     Ms. Rocky has a pediatric advanced life support certificate issued by the Red Cross.

4.     Ms. Rocky is certified as a medical assistant through the American Registry for Medical Assistants.

5.     Ms. Rocky is fully qualified under the laws of Florida to be a medical assistant.

6.     Ms. Rocky was advised by FCHCC (Dr. Susan Zimmer, Ms. Rocky's immediate supervisor, and Nancy Zeigler, FCHCC's manager of the Fort Pierce Unit and the person who hired Ms. Rocky) that she met all of FCHCC's qualifications for the position for which she was hired.

7.     The essential function of the job was patient care, which Ms. Rocky was fully capable of doing.

8.     Attendance at work, as defined by the concept of perfect attendance in accordance with scheduling, was not an essential function of the job.

9.     Rather, FCHCC's own policies and procedures provided for sick leave and other instances where attendance at work was excused.  In particular, FCHCC had a sick leave policy.

10.     Further, FCHCC at the onset of Ms. Rocky's employment (1) was made aware that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and (2) agreed that perfect attendance was neither required nor essential.

11.     It was further stressed that Ms. Rocky would – due to her son's disability – miss

2

more work than an employee not associated with a child with severe disabilities and
that FCHCC agreed that perfect attendance was neither required nor essential.

D.    Ms. Rocky was the subject of an adverse employment action.

    12.    Ms. Rocky was fired by Nancy Zeigler and Dr. Zimmer.

    13.    Nancy Zeigler and Dr. Zimmer told Ms. Rocky on the day she was terminated that
she had missed more work than they had thought she would and that due to
absenteeism her work quality was unacceptable and that she had the choice of
finishing the day or leaving then.

    14.    Nancy Zeigler's and Dr. Zimmer's words made it unequivocally clear that Ms.
Rocky's employment was being involuntarily terminated.

E.    FCHCC knew that Ms. Rocky had a relative with a disability.

    15.    At Ms. Rocky's interview told both Nancy Zeigler and Dr. Zimmer that she had a son
with a disability and a mother who was disabled.

    16.    Ms. Rocky also told Nancy Zeigler's Executive Secretary about her son's disability.

    17.    Ms. Rocky's son Phillip is disabled.

    18.    Phillip, age 6 ½, is disabled and has been since birth.  Phillip has major problems
with all major body systems – for example, breathing problems, constant tremors,
and kidney problems.  He has a life expectancy of 3-11 years.

F.    The adverse employment action suffered by Ms. Rocky was because of her relationship with
her disabled son.

    19.    Ms. Zeigler and Dr. Zimmer told Ms. Rocky that she was being fired because of her
absences and tardies, which they acknowledged were because of Phillip's doctor

3

appointments.

20. Ms. Zeigler had also told Ms. Rocky that she was unhappy about Ms. Rocky having to be late as a result of taking Phillip to the doctor.

21. Two days prior to being fired, Ms. Rocky was called from Phillip's school due to a life threatening medical emergency where Phillip had gone unresponsive and could not be woken up. Ms. Zeigler told her to go, but then two days later said the absence was unwarranted and a part of a pattern of excessive absenteeism.

G. FCHCC's reasons for firing Ms. Rocky are pretextual.

22. Ms. Rocky did not miss the amount of work alleged by FCHCC.

23. The absences of which FCHCC complains were authorized and agreed to by FCHCC.

24. Ms. Zeigler adjusted Ms. Rocky's schedule for one month after the beginning of the school year. It is disingenuous to now assert that the agreed upon schedule amounted to tardiness. The only time Ms. Rocky took off for her own health was for the emergency surgery. She did not miss work due to her disabled mother's health.

25. FCHCC agreed earlier that the type of attendance issues Ms. Rocky had were acceptable to them and did not make her unacceptable or unqualified for the job.

26. Ms. Rocky expressly told Debbie Boyer, Nurse Manager of the Emergency Room Department and Ms. Rocky's supervisor at Lawnwood, that she was using her leave due to family medical emergencies. Ms. Rocky expressly advised that she was exercising her rights under the Family Medical Leave Act.

27. Ms. Rocky always gave as much notice of the medical emergencies as possible.

28. It was often impossible to give more than a few hour notice.

4

29.     Ms. Rocky was the subject of an adverse employment action at Lawnwood.

30.     Ms. Rocky was suspended without pay.

31.     Ms. Rocky was fired.

I.     There was a causal connection between Ms. Rocky's protected FMLA activity and the adverse employment action.

32.     Debbie Boyer told Ms. Rocky that she had to make a choice – she could either stop taking time off for Phillip's medical care or she would be fired.

33.     Debbie Boyer also said that everyone would like to take time off for their families, but that it simply was not acceptable.

J.     Ms. Rocky was meeting Lawnwood's legitimate expectations.

34.     Ms. Rocky was advised by Lawnwood (Liz Rainwood and Ms. Rocky's immediate supervisor, Debbie Boyer) that she met all of Lawnwoods qualifications for the position for which she was hired.

35.     The essential function of the job was doing clerical work, which Ms. Rocky was fully capable of doing.

36.     Attendance at work, as defined by the concept of perfect attendance in accordance with scheduling, was not an essential function of the job.

37.     Rather, Lawnwood's own policies and procedures provided for sick leave and other instances where attendance at work was excused. In particular, Lawnwood had a sick leave policy.

38.     Further, Lawnwood at the onset of Ms. Rocky's employment (1) was made aware that Ms. Rocky would – due to her son's disability – miss more work than an

employee not associated with a child with severe disabilities and (2) agreed that perfect attendance was neither required nor essential.

39.   It was further stressed that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and that Lawnwood agreed that perfect attendance was neither required nor essential.

40.   When Ms. Rocky transferred to the Emergency Room Department, Debbie Boyer also (1) was made aware that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and (2) agreed that perfect attendance was neither required nor essential.

41.   Ms. Rocky during her employment at Lawnwood received two performance evaluations rating her excellent.  She received no bad evaluations.

K.   Ms. Rocky was qualified for her position with Lawnwood.

42.   Ms. Rocky has an associate degree as a medical assistant with office technology from Webtster College.

43.   Ms. Rocky has CPR and first aid certificates issued by the Red Cross.

44.   Ms. Rocky has a pediatric advanced life support certificate issued by the Red Cross.

45.   Ms. Rocky is certified as a medical assistant through the American Registry for Medical Assistants.

46.   Ms. Rocky is fully qualified under the laws of Florida to be a medical assistant.

47.   Ms. Rocky was advised by Lawnwood ( that she met all of FCHCC's qualifications for the positions she held.

48.   The essential function of the job was clerical work, which Ms. Rocky was fully

6

capable of doing.

49.    Attendance at work, as defined by the concept of perfect attendance in accordance with scheduling, was not an essential function of the job.

50.    Rather, Lawnwood's own policies and procedures provided for sick leave and other instances where attendance at work was excused.  In particular, Lawnwood had a sick leave policy.

51.    Further, Lawnwood at the onset of Ms. Rocky's employment (1) was made aware that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and (2) agreed that perfect attendance was neither required nor essential.

52.    It was further stressed that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and that Lawnwood agreed that perfect attendance was neither required nor essential.

L.    Ms. Rocky was the subject of an adverse employment action.

53.    Ms. Rocky was suspended without pay.

54.    Ms. Rocky was fired.

M.    Lawnwood knew that Ms. Rocky had a relative with a disability.

55.    Ms. Rocky told Liz Ringwood during her interview that Philip, her son, was disabled. Ms. Rocky told all of the assistant directors of nursing about Phillip's disabilities. Ms. Rocky told Debbie Boyer that Philip, her son, was disabled.  She actually provided Ms. Boyer a listing in writing of his disabling conditions.

56.    Ms. Rocky told Reid Johnson, Ms. Boyer's supervisor and the director of the entire

7

Emergency Room Department.

57.   Ms. Rocky's son Phillip is disabled.

58.   Phillip, age 7, is disabled and has been since birth.   He has a life expectancy of 3-11 years.

N.   The adverse employment action suffered by Ms. Rocky was because of her relationship with her disabled son.

59.   Debbie Boyer told Ms. Rocky that she had to make a choice – she could either stop taking time off for Phillip's medical care or she would be fired.

60.   Debbie Boyer also said that everyone would like to take time off for their families, but that it simply was not acceptable.

O.   Lawnwood's reasons for firing Ms. Rocky are pretextual.

61.   Further, Lawnwood at the onset of Ms. Rocky's employment (1) was made aware that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and (2) agreed that perfect attendance was neither required nor essential.

62.   It was further stressed that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and that Lawnwood agreed that perfect attendance was neither required nor essential.

63.   When Ms. Rocky transferred to the Emergency Room Department, Debbie Boyer also (1) was made aware that Ms. Rocky would – due to her son's disability – miss more work than an employee not associated with a child with severe disabilities and (2) agreed that perfect attendance was neither required nor essential.

8

64.	Ms. Rocky during her employment at Lawnwood received two performance evaluations rating her excellent.  She received no bad evaluations.

65.	Debbie Boyer told Ms. Rocky that she had to make a choice – she could either stop taking time off for Phillip's medical care or she would be fired.

66.	Debbie Boyer also said that everyone would like to take time off for their families, but that it simply was not acceptable.

SHARMARIE ROCKY

Sworn to and Subscribed

Before Me This January 28, 1999.

NOTARY PUBLIC

My Commission expires:



ROBERT ANTHONY BOGDAN
My Commission CC828131
Expires Jan. 16, 2000

9